**EAGLE RICE & FEED MILLS, Inc., v. BOURQUE (BOURQUE, Intervener).**

No. 1175.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1933.

Carmouche & Carmouche, of Crowley, for appellant.

Bruner & Chambers, of Crowley, for appellee.

LE BLANC, Judge.

Plaintiff, a judgment creditor of the defendant, Leon Bourque, attached a Chevrolet truck as being his property. Louis Bourque, son of Leon Bourque, came in by way of intervention and third opposition, claiming to be the owner of the truck, and prayed that the writ of attachment in so far as it affected the same be set aside and that he be decreed to be the owner thereof and that he be restored to the possession of same. He alleges in his petition of third opposition that he had filed an affidavit with the sheriff setting forth the chain of title under which he had acquired the truck. The affidavit referred to, which we find annexed to his petition, is to the effect that he is the owner of a Chevrolet truck bearing motor number T. 4943620; having purchased the same from Alice Hanks Bourque on August 3, 1932. The record discloses that Mrs. Alice Hanks Bourque is the wife of Leon Bourque and the mother of Louis Bourque. We may also remark here that the seizure under the writ of attachment was made on August 16, 1932.

Although there is no petition to show it, the record also discloses that a Chevrolet coach, 1930 model, had also been seized under the same attachment, and that Miss Mabel Bourque, a daughter of Mr. and Mrs. Leon Bourque, also intervened in the same manner as did Louis Bourque, claiming to be the owner, under a chain of title exactly the same as that of Louis Bourque, of the automobile.

Plaintiff put both interventions at issue, denying the ownership of the truck and automobile as claimed, and averring specifically that the title to the property as set out was fraudulent, and that the same belonged to the defendant Leon Bourque.

The two interventions were consolidated for the purpose of trial, and were both dismissed by the judgment of the lower court. The judgment decreed that the property described in the interventions vested in the community between Leon Bourque and his wife, of which he was the head and master,

and as such it was subject to seizure under the writ of attachment.

From that judgment, both interveners were granted an appeal. Louis Bourque only perfected his appeal, however, and the claims of Mabel Bourque are not before this court.

The sales of the truck and car to Louis and Mabel Bourque were executed. in authentic form before H. Purvis Carmouche, notary public, but they were never recorded. The original sale to Louis Bourque is found in the record. The date had originally been written as September 3, 1933, but the word September was erased and August was written in its place. Had the sale taken place only in September, of course, that would have been after the seizure had taken place. Mr. Carmouche, the notary, explains the correction as follows: "As I have no stenographer at this time nor at that time, I probably confused the months by mistake but I think you will see that it is really August instead of September. The sale, however, was not drafted by me in September." The consideration recited in the act of sale is the sum of $125 cash, and there is also therein contained a clause in which Mrs. Bourque declares that the property sold is her own separate and paraphernal property, and forms no part of the community. Leon Bourque, the husband, joins in the execution of the sale and confirms and ratifies the same by signing it along with his wife.

■■■ Counsel for the intervener now contends that, even though the truck be held to be community property, the husband is bound by his ratification of the sale made to Louis Bourque, and it had passed from the ownership of ·the community before it was seized and is no longer liable to execution for the debts. As regulating the status of the property between the parties to the act of sale, such ratification might be effective and binding, but in considering the rights of third parties, we do not know of any reason why they should be bound by it. In the case of Kerwin v. Hibernia Insurance Co., 28 La. Ann. 312, it was held that, in a sale wherein it was declared by the husband and the wife that the thing sold was the separate property of the wife, the heirs were not estopped from showing that it was community property. "Could such declarations be conclusive against the heirs of either spouse," says the court, "it would be an easy matter to change the rights of succession and the character of separate and community property." We believe that creditors of the husband, or of the community likewise, regardless of such declarations in an act of sale, should not be estopped from showing, if they can, the true character of the property, for otherwise the debtor could easily escape the just payment of his debts or the debts of the community by having the wife join him in a declaration that all property in their possession was her separate and paraphernal property. Besides, it seems that if the intervener in this case wished to avail himself of such estoppel, he should have specially pleaded it, and this he did not do. On the contrary, the evidence on the subject as to whether this truck was the separate property of Mrs. Bourque or belonged to the community, took quite a wide range. No objection was urged to its introduction, and its admission in the record operated as a waiver of the plea and contention here made for the first time.

■ Naturally if the truck seized under the writ of attachment and herein claimed by Louis Bourque as his property as having been purchased from his mother was the latter's separate and paraphernal property, he would be entitled to judgment recognizing him as the owner, and the attachment would have to be set aside. Mrs. Bourque, in proving her title to the truck, refers to a trade of an automobile which she says had been donated to her, and counsel for intervener now contend that the origin of her title to the truck being by donation, the usual presumption, that all property acquired after the marriage falls in the community, does not apply, as under article 2402 of the Civil Code, it is only property donated to both spouses jointly that comes within that presumption. It is true that a donation made to one spouse alone has been held to present an exception to the rule as stated, Hurst v. Thompson & Co., 118 La. 58, 42 So. 645, but we do not understand that decision to go so far as to hold that a wife's mere statement to the effect that movable property was given to her is sufficient to constitute such property as her own separate and paraphernal property. Whatever testimony there is in this record concerning the donation comes from Mrs. Bourque herself, and her statement is merely a general one to the effect that the car had been given her, and that, she admits, was after she and Mr. Bourque had been married. She does not state by whom it was given to her and does not refer to an actual delivery which is necessary to complete a donation of corporeal movable effects. She admits further that her husband used the truck in his business, and that the trade of the automobile for the truck was made by both her husband· and herself. Such evidence as we find is far from being satisfactory and by· no means sufficient, in our opinion, to establish title to the truck herein seized in Mrs. Bourque as her own separate and paraphernal property.

But even if it be conceded that the seized truck was the separate and paraphernal property of Mrs. Bourque, it must be borne

in mind that the issue here is between the intervener, Louis Bourque, who claims to be the owner of it as having purchased the same from his mother, and the seizing creditor who contends that the transaction between the former two was fraudulent. Any decree rendered in this proceeding would have the effect only of disposing of the intervener's claim to the truck.

Louis Bourque was only 19 years of age, and married, when he claims to have bought the truck and paid for it with his savings, which he says he kept at home. These savings included $75 which he had collected from an insurance policy. It was subsequent to the collection of this amount that he was married. His testimony as to his employment before he claims to have bought the truck is very unsatisfactory, and it is hard to believe that from his meager earnings he could have saved enough to get married and pay $125 in cash for this truck besides. The only positive testimony he gives is with regard to a job he had in New Orleans with Jaubert Brothers, but that may have been two years and a half before he bought the truck, and then he does not give any idea as to how much he was making. He worked off and on for other people in the country, but mentions no names except Mr. Cabina and Dore's Rice Mills, and with reference to these jobs does not state the time nor what he was paid. He does say that he worked for his father who paid him $30 per month and boarded him, but considering his own testimony and that of his mother as to his father's financial condition, that part of his testimony is rather doubtful. His own counsel testifies also that his father was experiencing difficulty in running his business and had sought his advice in obtaining a loan. Whilst counsel denies that he ever suggested that Mr. Leon Bourque go into bankruptcy, he admits that he told Mr. Chambers, attorney for the plaintiff, jokingly, that Bourque had sold this truck and automobile to his children to get enough money to go in bankruptcy.

Counsel for intervener contend that as plaintiff's purpose is to set aside a sale on the ground of fraud, it should have alleged the insolvency of the defendant which it did not do, citing C. C. art. 1971 and Hicks Co. v. Thomas, 114 La. 219, 38 So. 148, in support of their contention. But here again it seems as though counsel urge their contention after they have admitted, if not indeed furnished, proof of that fact themselves in the record. Such proof, admitted without objection, had the effect of enlarging the pleadings and supplying the missing allegations.

With the character of testimony before us and the circumstances attending the sale of this truck, we have concluded that the transaction between Mrs. Bourque and her son was not bona fide. We do not believe in the first place that the truck was the separate and paraphernal property of Mrs. Bourque, and in the second place we do not believe that Louis Bourque was in position, financially, to have purchased it as he claims he did and pay the price for it. We are of the opinion that the judgment of the lower court correctly decreed the dismissal of his intervention and third opposition, and the judgment appealed from is therefore affirmed.